# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

NEW BALANCE ATHLETICS, INC.,

      Plaintiff,

      v.

AUTHENTIC BRANDS GROUP, NAUTICA
APPAREL, INC., and NAUTICA OPCO LLC,

      Defendants.

C.A. No. _____

## **COMPLAINT**

1.      This is a design patent and trademark infringement case.  Plaintiff New Balance Athletics, Inc. ("New Balance") is a market-leading footwear and apparel company.  Defendant Authentic Brands Group owns the NAUTICA footwear and apparel brand, which licenses the brand to its subsidiaries Nautica Apparel, Inc. and Nautica OpCo LLC (collectively, "Nautica").  Nautica recently adopted designs and trademarks that are virtually identical to those used by New Balance.

2.      As described more fully below, New Balance owns a design patent related to one of its most popular shoe models, the "247."  *See* Exhibit A (U.S. Design Patent No. D838,464 (the "'464 Patent")).  Nautica recently began selling footwear that bears a design that an ordinary observer would find to be substantially the same as the design covered by the '464 Patent:

          **NEW BALANCE**                     **NAUTICA**

 

3.      New Balance also owns federally-registered and incontestable trademark registrations for a block capital letter "N" on footwear and apparel:



*See* Exhibit B (U.S. Reg. Nos. 3,282,106 and 1,308,133) (the "Block N Footwear Marks"); Exhibit C (U.S. Reg. No. 4,477,442) (the "Block N Apparel Mark") (together, the "Block N Mark" or "Block N Marks").

4.      New Balance has exclusively used the Block N Footwear Marks in commerce since the 1970s and the Block N Apparel Mark since at least as early as 1996.  It has sold hundreds of millions of pairs of shoes and pieces of apparel bearing the marks worldwide, which represent many billions of dollars in sales.  The Block N Marks are famous and embody an enormous amount of goodwill.  They are among the company's most valuable assets.

5.      Nautica recently began using a block letter "N" on footwear:



6.     Nautica also recently began using a block letter "N" on apparel:

 

7.     Nautica's use of a block letter "N" on footwear and apparel: (i) is likely to cause confusion among consumers and/or suggest an affiliation, connection, or association between New Balance and Nautica; (ii) dilutes the distinctive quality of New Balance's famous Block N Marks; and (iii) constitutes unfair competition.

8.     The breadth of the infringement also evidences an intent to free ride on New Balance's famous brand.

9.     Nautica's conduct has and will irreparably harm New Balance and its substantial goodwill.  It also has and will cause monetary harm in an amount to be determined at trial.

**PARTIES**

10.     New Balance Athletics, Inc. is a Massachusetts corporation with its principal place of business at 100 Guest Street, Boston, Massachusetts 02135.

11.     Upon information and belief, Authentic Brands Group is a Delaware Limited Liability Company with its principal place of business at 1411 Broadway, New York, New York 10018.

12.     Upon information and belief, Nautica Apparel, Inc. is a corporation existing under the laws of New York, and a wholly-owned subsidiary of Authentic Brands Group, with its principal place of business at 40 W 57th Street, New York, New York 10019.

13.     Upon information and belief, Nautica OpCo LLC is a corporation existing under the laws of New York, and a wholly-owned subsidiary of Authentic Brands Group, with its principal place of business at 40 W 57th Street, New York, New York 10019.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367.   Plaintiff New Balance Athletics, Inc. is a citizen of Massachusetts.   Upon information and belief, Defendant Authentic Brands Group is a Delaware Limited Liability Company and is a citizen of Delaware.   Defendants Nautica Apparel, Inc. and Nautica OpCo LLC are citizens of New York.   As such, there is complete diversity of the parties. The matter in controversy exceeds $75,000, exclusive of interests and costs.

15.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because this is the judicial district where: (i) a substantial part of the events giving rise to the claims occurred; and (ii) where Nautica is subject to personal jurisdiction.

16.     Upon information and belief, Nautica regularly solicits and conducts business in Massachusetts.   Specifically, Nautica licenses, promotes, and sell its goods, including the goods at issue here, within Massachusetts.   In addition, upon information and belief, Nautica or its agents maintain websites available in Massachusetts that facilitate and/or enable users to purchase the infringing goods from Massachusetts.

## FACTS

### New Balance

17.     New Balance is a private company that was founded in 1906.  Today, New Balance is one of the largest athletic shoe companies in the world, with over 4,000 employees and approximately $4.1 billion in annual sales worldwide in 2018.  It is the only major company that manufactures footwear in factories in the United States.

18.     Since its earliest days, New Balance has focused on fit and authenticity as its core brand message.  New Balance is one of the few athletic footwear manufacturers to make shoes in true width sizing, rather than the more common narrow and wide.  Because of its brand qualities, New Balance has some of the most brand-loyal customers in the marketplace.

### New Balance's "247"

19.     In 2017, New Balance began selling a new shoe model named the "247" that uses a unique design on the "upper" of the shoe:



20.     The 247 was an instant success.  Articles about its launch appeared widely in the fashion and footwear press, with more than 200,000,000 impressions in a two-month period.

21.     For example, widely-followed new-media brand Highsnobiety published several articles about the 247 around the time of its release, with titles such as "The New Balance 247 Classic Is the Perfect Lifestyle Runner," "New Balance Creates the Perfect 24/7 Companion with

New 247 Luxe Model," and "New Balance's Latest 247 Travels From Day to Night in The City That Never Sleeps."  *See* Exhibit D, last visited August 19, 2019.

22.     Likewise, Footwear News and Runner's World published articles featuring the 247, including "The 5 Sneakers You Didn't Know You Wanted for Christmas," "The 5 Sneakers Every Man in His 30s Should Own," and "The 10 Hottest New Balance 247s for Wearing All Day, Every Day." *See* Exhibit E, last visited August 19, 2019.

23.     New Balance has invested a significant amount of money to advertise the 247s.  In 2017 alone, New Balance spent over $1,000,000 advertising the model in North America.

24.     It is one of New Balance's most popular products.  In its first full year of sales, New Balance sold more than 750,000 pairs of 247s in North America, and over the span of three years, New Balance sold almost 2,000,000 pairs of 247s in North America.

## New Balance's Intellectual Property

### *The '464 Patent*

25.     New Balance owns the entire right, title, and interest in and to the '464 Patent related to the 247 shoe model.   The '464 Patent was issued by the U.S. Patent Office to New Balance on January 22, 2019 as U.S. Design Patent No. D838,464, and is titled "Shoe Upper."  *See* Exhibit A.

26.     The '464 Patent has one claim:  "[t]he ornamental design for a shoe upper, as shown and described."  FIG. 1 of the Patent is reproduced below, which depicts a lateral side view of the claimed shoe upper in solid lines:



FIG. 1

FIG. 2 and FIG 3 of the patent show additional views.  *See id.*

### *The Block N Marks*

27.      In the 1970s, New Balance released a new model (the 320) that was its first shoe to feature a block N mark.  The shoe was an enormous success.  Its release benefitted from two coinciding events: the rising popularity of running, and its selection by Runner's World as the best running shoe in the world:



28.      Since that time, New Balance has exclusively used a distinctive Block N Mark to identify its goods.  A block N has appeared on the side of nearly all New Balance footwear sold for more than forty years.

29.      During that span, the Block N Mark also has appeared in virtually every New Balance footwear advertisement.  For example:









30.     Aside from its use of the Block N Mark on shoes in advertisements, New Balance has featured the Block N in the "headline copy" of its advertisements.  For example:

I C O N I C



31.     The Block N Mark is featured in many of New Balance's social media posts on Instagram and Facebook, where New Balance has an audience of over 3,200,000 Instagram followers and over 8,000,000 Facebook followers.

32.     New Balance's current annual global marketing budget is well over $100,000,000—the vast majority of which is used toward marketing and advertising that incorporates the Block N Mark.

33.     Today, the Block N Mark is used on approximately 96,000,000 pairs of New Balance shoes sold annually in over 68 countries worldwide.

34.     In addition to its use on footwear, New Balance uses its Block N Mark on a variety of related goods.  Since at least as early as 1996, New Balance has used the mark on a wide range of apparel.  For example:



35.    New Balance has been diligent in protecting its rights in its trademarks.  It owns an incontestable federal registration for the block capital letter "N" for footwear as shown here:



*See* Exhibit B (U.S. Reg. Nos. 3,282,106 (block capital letter "N," issued August 21, 2007 for "athletic footwear" in class 25) and 1,308,133 (block capital letter "N" located at an angle on the side of a shoe, issued December 4, 1984 for the same).  It also owns an incontestable federal registration for the same block letter "N" for apparel.  *See* Exhibit C (U.S. Reg. No. 4477442 (issued February 4, 2014 for "[a]thletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms; [s]weatshirts" in class 25)).

36.     In addition to its domestic registrations, New Balance owns trademark registrations for its Block N Mark around the world, including in: Mexico, Japan, Australia, Canada, Chile, China, Hong Kong, New Zealand, Russian Federation, Singapore, South Africa, Albania, Armenia, Benelux, Bosnia-Herzegovina, Croatia, Czech Republic, Bulgaria, Estonia, India, South Korea, Finland, Kosovo, Latvia, Lithuania, Austria, North Macedonia, Montenegro, Norway, Poland, Serbia, Slovak Republic, Turkmenistan, Romania, Taiwan, Turkey, Vietnam, Argentina, Cuba, Colombia, Guatemala, Nicaragua, Panama, Paraguay, Peru, Uruguay, United Kingdom, Iceland, Ireland, France, Germany, Spain, Denmark, Ukraine, Portugal, Venezuela, Greece, Egypt, Jordan, Lebanon, United Arab Emirates, Madagascar, Morocco, OAPI, Macao, Malaysia, Tunisia, Zambia, Zimbabwe, Oman,  Hungary, and Sweden.

37.     New Balance's longstanding exclusive use, widespread marketing, and worldwide sales have made the Block N Mark famous.  Indeed, numerous footwear and fashion commentators have expressly identified the mark as "famous" or "iconic."  For example:

- "In 1976, New Balance launched the 320, the first New Balance sneaker to feature the now-famous 'N' logo."  *See* Exhibit F, last visited August 19, 2019.

- "Enter the 1970s and the running phenomenon explodes in the US. The famous letter 'N' was born on the New Balance shoe and the conscious decision to 'name' their shoes with numbers over model names." *Id*.

- "The famous "N" logo is stitched onto the lateral side of the sneaker while sitting atop an ENCAP midsole for comfort and durability." *Id*.

- "…the guy who first emblazoned the world famous 'N' on the lateral panels of their iconic new balance mens trainers." *Id*.

- "The iconic N logo, collar strap, and rubber tongue label are reflective and pay homage to New Balance running models from the past."  *Id*.

- "In leading up to the release of the 990v4, press play below to hear Terry Heckler, the designer of New Balance's iconic "N" logo, speak on the inspiration behind his original design, the 990 and the history of the brand." *Id*.

38.     The Block N Mark is such a key element of the brand that the company recently began selling shoe models with interchangeable "N" logos, which allow wearers to customize their look while remaining on brand:



*See* Exhibit G, last visited August 19, 2019.  Engaging the customer with the logo in this way uniquely communicates and emphasizes its independent source identifying quality.

39.     Like many successful footwear and apparel brands, New Balance collaborates with third-party brands and fashion companies to develop "special edition" products.

40.     For example, New Balance collaborated with Sesame Street to create a line of children's sneakers bearing the famous Block N Mark and the Sesame Street characters.  The models were nationally advertised on the children's television network Nickelodeon, among other media.  Other collaborations with famous brands on shoes bearing the famous Block N Mark include: Charles Schultz's Peanuts characters, Marvel's Spiderman and Black Panther characters, Disney characters, Danner, Stance (including a collaboration involving the 247 model), and Burton.

41.     New Balance also collaborated with fashion company J. Crew to release several "special editions" that all bore the famous Block N Mark.  The collaborations were widely

promoted through paid and organic advertising and publicity.  For example, the shoes appeared on the cover and inside several editions of the J. Crew catalog, which is delivered to millions of customer homes monthly.

42.     New Balance also collaborated with hat maker New Era on a limited-edition shoe/hat combination package that is expressly focused on the "N" logo.  The package includes a pair of New Balance shoes with the interchangeable "N" logos described above.  It also comes with a "blank" New Era hat that also can attach the "N" logos:





*See* Exhibit H, last visited August 19, 2019.

43.     As a result of these successful collaborations, New Balance customers understand that the company often uses its Block N Mark in collaboration with other companies.

### Nautica And Its Infringing Conduct

44.     Upon information and belief, Nautica is a nautical-influenced American sportswear brand for men, women, and children that was founded in 1983.  Among other goods, it sells footwear and apparel.

45.      Upon information and belief, Defendant Authentic Brands Group, owns the NAUTICA brand, which it licenses to its subsidiaries, Defendants Nautica Apparel, Inc. and defendant Nautica OpCo LLC.

46.     Upon information and belief, Nautica recently began marketing a shoe named the "Packer."  As shown below, the Nautica Packer uses an ornamental design on its upper:



14

47.     Upon information and belief, the Nautica Packer shoes are available for sale in Massachusetts for approximately $30.00.

48.     The design on the Nautica Packer is virtually identical to the ornamental design covered by New Balance's '464 Patent:



49.     An ordinary observer of Nautica's shoe upper and New Balance's patented design, giving such attention that a footwear purchaser usually gives, would find the two designs to be substantially the same.  The overall impression of the two designs is substantially the same.  It is axiomatic that the '464 Patent is infringed by Nautica's design because in the eye of an ordinary observer they are substantially the same.

50.     Upon information and belief, Nautica recently began using a block letter "N" on various types of footwear:

**NEW BALANCE**                    **NAUTICA**





51.     Upon information and belief, Nautica recently began using a block letter "N" on various types of apparel:



52.     Nautica's intentional adoption of a block letter "N" on footwear and apparel is likely to cause confusion among consumers and/or suggest an affiliation, connection, or association between New Balance and Nautica.  Nautica's use of a block letter "N" is likely to dilute the distinctive source identifying quality of the famous Block N Marks.  Nautica's use of a block letter "N" also constitutes unfair competition.

53.     Upon information and belief, given the fame of New Balance's Block N Marks, Nautica must have known of New Balance's rights in the marks.  Also, given New Balance's

global registrations for the Block N Marks, Nautica had at least constructive notice of New Balance's rights in those marks.  As a result, Nautica's infringement is intentional.  In addition, Nautica intended to dilute the distinctive source identifying quality of the Block N Marks.

54.     Nautica's infringing goods and New Balance's goods are marketed and sold to overlapping classes of purchasers insofar as the Nautica products are a casual "lifestyle" or fashion footwear and apparel and many of New Balance's products using the marks are in the same category.

55.     Nautica and New Balance advertise through overlapping marketing channels insofar as they use popular magazines and the Internet, including the same social media, to advertise the relevant goods.  In addition, the parties' relevant goods are routinely the topic of discussion in the same fashion magazines and on popular fashion websites, blogs, and social media posts.

56.     Nautica and New Balance sell the relevant goods through overlapping sales channels insofar as they both sell their goods through brick and mortar stores (such as Nordstrom, Kohl's, and Macy's) and through the Internet (such as Amazon).

57.     Like New Balance, Nautica is known for its collaborations with others.  Notably, it collaborates with individuals and companies who also are associated with New Balance.

58.     For example, in 2017 and 2018, Nautica partnered with rapper and designer Lil Yachty.  *See* Exhibit I, last visited August 19, 2019 ("And after much ado and anticipation, the two entities launched their first collaboration—The Lil Yachty Collection by Nautica—this week.").  Among relevant consumers, Lil Yachty is a well-known New Balance supporter, even "name-dropping" the brand in his hit song "Minnesota."  *See also id.* ("Pausing briefly and staring

into the camera, Lil Yachty professed on an episode of Complex's Sneaker Shopping, "Oh my god, I love New Balance.").

59.     Nautica also has collaborated with New Era, which collaborated with New Balance on the block "N" focused special-edition package described above.

60.     Nautica's participation in collaborations increases the likelihood of consumer confusion concerning an affiliation, connection, or association between New Balance and Nautica because consumers are likely to believe that New Balance authorized or licensed Nautica to use its famous Block N Mark on its goods.  Had New Balance authorized Nautica to design special-edition products, it might have been a highly successful collaboration—like New Balance's collaboration with J. Crew.  New Balance, however, never authorized or licensed Nautica to use its trademarks.

61.     Nautica's use of a block letter "N" is likely to cause point-of-sale, initial interest, and post-sale confusion, to the irreparable harm and detriment of New Balance and the substantial goodwill it has developed in Block N Marks.

62.     As a result of the foregoing, New Balance has and will suffer irreparable harm and monetary harm in an amount to be determined at trial.

## <u>COUNT I</u>
### (Patent Infringement - 35 U.S.C. § 271)

63.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 62 above as if fully set forth herein.

64.      Nautica has infringed and continues to infringe all elements of the claim in New Balance's '464 Patent in violation of 35 U.S.C. § 271 by, among other things, making, selling, and offering for sale the Packer shoe and other footwear embodying New Balance's patented design

for such shoes (the "ornamental design for a shoe upper"), and will continue to do so unless enjoined by this Court.

65.     Nautica's infringing acts include making, using, selling, offering to sell, and importing into the United States products covered by the '464 Patent including, but not limited to, the Packer shoe and other footwear and/or actively inducing infringement by assisting, overseeing, directing, and personally participating in the design, marketing, advertising, and sales of the Packer shoe and other infringing footwear.

66.     Upon information and belief, Nautica has sold, made offers to sell, continues to sell, and/or offers to sell products infringing the '464 Patent throughout the United States and elsewhere, and within Massachusetts.

67.     Nautica's acts of infringement have been without express or implied license by New Balance, are in violation of New Balance's rights, and will continue unless enjoined by this Court.

68.     Upon information and belief, Nautica has been made aware of and had knowledge of the '464 Patent, and Nautica's infringement of the '464 Patent has been, and continues to be, with full knowledge of the '464 Patent and is a deliberate and willful infringement thereof.

69.     This is an exceptional case in view of Nautica's activities and blatant infringement.

70.     New Balance has been, is being, and will continue to be injured and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under at least 35 U.S.C. §§ 281, 284, 285, and 289.

71.     Nautica has caused, is causing, and will continue to cause irreparable harm to New Balance for which there is no adequate remedy at law and for which New Balance is entitled to injunctive relief under at least 35 U.S.C. § 283.

<u>**COUNT II**</u>
**(Trademark Infringement—15 U.S.C. § 1114)**
**(*The Block N Marks*)**

72.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 71 above as if fully set forth herein.

73.     As described above, New Balance owns the distinctive and federally registered Block N Marks as depicted in U.S. Reg. Nos. 3,282,106 and 1,308,133 for footwear and U.S. Reg. No. 4,477,442 for apparel.

74.     New Balance's ownership and exclusive use in commerce of the Block N Marks predates the use by Nautica of the block letter "N" on footwear and apparel.

75.     Upon information and belief, Nautica's conduct is willful and intentional and intended to free-ride off the goodwill associated with the Block N Marks.  Nautica is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Nautica's conduct is therefore also willful and intentional.

76.     Nautica uses the block letter "N" mark in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear and apparel products.

77.     Nautica's use in commerce of the block letter "N" in connection with footwear and apparel, as described above, constitutes infringement of the trademarks that are the subjects of U.S. Reg. Nos. 3,282,106 and 1,308,133 (footwear) and U.S. Reg. No. 4,477,442 (apparel), in violation of 15 U.S.C. § 1114, in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers.

78.     As a direct and proximate result of Nautica's violations of 15 U.S.C. § 1114, New Balance has been and will continue to be damaged.

79.     Upon information and belief, Nautica has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

80.     Nautica's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Nautica is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## COUNT III
### (False Designation of Origin—15 U.S.C. § 1125(a))
### (*The Block N Marks*)

81.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 80 above as if fully set forth herein.

82.     As described above, New Balance owns the distinctive Block N Marks in connection with footwear and apparel.

83.     New Balance's ownership and exclusive use in commerce of the Block N Marks in connection with footwear and apparel predates the use by Nautica of the block letter "N" in connection with footwear and apparel.

84.     Upon information and belief, Nautica's conduct is willful and intentional and intended to free-ride off the goodwill associated with the Block N Marks.  Nautica is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Nautica's conduct is therefore also willful and intentional.

85.     Nautica uses the block letter "N" in interstate commerce in connection with the sale, offering for sale, distribution, and/or advertising of its footwear and apparel products.

86.     Nautica's use in commerce of the block letter "N" in connection with footwear and apparel, as described above, constitutes false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) in that it is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Nautica with New Balance and/or as to the origin, sponsorship, or approval by New Balance of Nautica's goods, services, or commercial activity.

87.     As a direct and proximate result of Nautica's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

88.     Upon information and belief, Nautica has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

89.     Nautica's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Nautica is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## COUNT IV
### (Dilution—15 U.S.C. § 1125(c))
### (*The Block N Marks*)

90.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 89 above as if fully set forth herein.

91.     As described above, New Balance owns the distinctive and federally registered Block N Marks (U.S. Reg. Nos. 3,282,106 and 1,308,133 for footwear and U.S. Reg. No. 4,477,442 for apparel).

92.     New Balance's ownership and exclusive use in commerce of the Block N Marks in connection with footwear and apparel predates the use by Nautica of the block letter "N" in connection with footwear and apparel.

93.     Through consistent and continued use, product promotion, and consumer and industry recognition, New Balance has developed the Block N Marks to the point that they are famous.  Nautica did not begin using the block letter "N" in commerce until after the Block N Marks became famous.

94.     Upon information and belief, Nautica's conduct is willful and intentional and intended to free-ride off the goodwill associated with the Block N Marks.  Nautica is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Nautica's conduct is therefore also willful and intentional.

95.     Nautica's block letter "N" used in the context of the same goods is likely to cause dilution of the distinctive qualities of the Block N Marks in violation of 15 U.S.C. § 1125(c).

96.     As a direct and proximate result of Nautica's violations of 15 U.S.C. § 1125, New Balance has been and will continue to be damaged.

97.     Upon information and belief, Nautica has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

98.     Nautica's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Nautica is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## COUNT V
### (Trademark Infringement—Mass. Gen. L. C. 110H §§ 11-14, 16)

99.     New Balance repeats and realleges the allegations contained in paragraphs 1 through 98 above as if fully set forth herein.

100.     As described above, New Balance owns valid and protectable trademark rights in the distinctive Block N Marks in connection with footwear and apparel.

101.     New Balance's ownership and exclusive use in commerce of its Block N Marks in connection with footwear and apparel predates the use by Nautica of the block letter "N" in connection with footwear and apparel.

102.    Upon information and belief, Nautica's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Block N Marks.  Nautica is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Nautica's conduct is therefore also willful and intentional.

103.    Nautica's adoption and use of a confusingly similar block letter "N" in Massachusetts and elsewhere in connection with the sale, offering for sale, distribution, and/or advertising of its footwear and apparel is likely to cause confusion among relevant consumers.

104.    Nautica's use of confusingly similar mark, as described above, constitutes trademark infringement in violation of Mass. Gen. Laws ch. 110H §§ 12 and 14 in that it is without New Balance's consent and is likely to cause confusion, mistake, and/or deception among consumers, all to the irreparable injury of New Balance and the goodwill it has developed in the Block N Marks.

105.    As a direct and proximate result of Nautica's violations of Mass. Gen. Laws ch. 110H §§ 12 and 14, New Balance has been and will continue to be damaged.

106.    Upon information and belief, Nautica has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to New Balance as a result of its wrongful conduct.

107.    Nautica's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Nautica is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## COUNT VI
### (Unfair Competition—Mass. Gen. L. C. 93A)

108.    New Balance repeats and realleges the allegations contained in paragraphs 1 through 107 above as if fully set forth herein.

109.    New Balance and Nautica are persons engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 11.

110.    Nautica's unlawful acts, conduct, and practices described above occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

111.    Nautica's acts, conduct, and practices described above, including without limitation the confusingly similar use of the block letter "N" in connection with the promotion, sale, and/or distribution of footwear and apparel products in Massachusetts, constitute unfair methods of competition and/or unfair or deceptive acts or practices, which are unlawful under Mass. Gen. Laws ch. 93A.

112.    As a direct and proximate result of Nautica's violations of Mass. Gen. Laws ch. 93A, New Balance has been damaged and will continue to be damaged.

## COUNT VII
### (Massachusetts Statutory Dilution—Mass. Gen. L. C. 110H § 16)

113.    New Balance repeats and realleges the allegations contained in paragraphs 1 through 112 above as if fully set forth herein.

114.    As described above, New Balance owns valid and protectable trademark rights in the distinctive Block N Marks in connection with footwear and apparel.

115.    New Balance's ownership and exclusive use in commerce of its Block N Marks in connection with footwear and apparel predates the use by Nautica of the block letter "N" in connection with footwear and apparel.

116.    Upon information and belief, Nautica's conduct is willful and intentional and intended to free-ride off of the goodwill associated with the Block N Marks.  Nautica is and was at all relevant times both actually and constructively aware of New Balance's prior use, ownership, and registration, and Nautica's conduct is therefore also willful and intentional.

117.    Nautica's adoption and use of a confusingly similar block letter "N" as described above, constitutes statutory dilution in that it is without New Balance's consent and create and will continue to create a likelihood of injury to New Balance's reputation and/or a likelihood of dilution of the distinctive quality of the Block N Marks in violation of Mass. Gen. Laws ch. 11H § 13.

118.    As a direct and proximate result of Nautica's dilution of the Block N Marks, New Balance has been and will continue to be damaged.

119.    Nautica's conduct is causing and will continue to cause New Balance to suffer irreparable harm and, unless Nautica is restrained, New Balance will continue to be so damaged, because it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, New Balance respectfully requests the following relief:

A.    That this Court enter judgment that: (i) Nautica has infringed the '464 Patent in violation of 35 U.S.C. § 271; (ii) Nautica has infringed the Block N Marks in violation of 15 U.S.C. § 1114; (iii) Nautica's use of the block letter "N" constitutes false designation of origin in violation of 15 U.S.C. § 1125; (iv) Nautica has diluted the Block N Marks in violation of 15 U.S.C. § 1125(c); (v) Nautica has infringed the Block N Marks in violation of Mass. Gen. L. C. 110H §§ 11-14, 16; (vi) Nautica's unlawful actions described herein constitute unfair competition and/or unfair or deceptive acts or practices, in violation of Mass. Gen. L. C. 93A; (vii) Nautica has diluted the Block N Marks in violation of Mass. Gen. L. C. 110H § 16; and that all of the foregoing wrongful activities by Nautica were willful;

B.    That this Court enjoin Nautica, its employees, agents, servants, and all in privity or acting in concert with any of them, from using the Block N Marks, or any block letter "N" or any

derivative(s) thereof or any design(s) confusingly similar thereto, in commerce on Nautica's footwear and apparel;

C.      That this Court enter an injunction against further infringement of the '464 Patent, further infringement and dilution of the Block N Marks, further false designation of origin concerning the Block N Marks, and further unfair competition and unfair or deceptive acts or practices related thereto, by Nautica and its employees, agents, servants, and all in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, importing, or advertising the infringing products, or any other footwear or apparel products that use a copy, reproduction, or colorable imitation of the '464 Patent or the Block N Marks;

D.      That this Court enter an order recalling all of Nautica's footwear and apparel products bearing the block letter "N" presently manufactured, sold, and/or distributed, and providing for a full refund for all recalled infringing products;

E.      That this Court enter an order directing the destruction of: (i) all infringing products, including all recalled infringing products; (ii) any other footwear or apparel products that use a copy, reproduction, or colorable imitation of the Block N Marks in Nautica's possession or control; (iii) all advertising materials related to the infringing products in Nautica's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

F.      That this Court award New Balance damages adequate to compensate New Balance for the patent infringement that has occurred pursuant to 35 U.S.C. § 284, or an award of Nautica's profits from its patent infringement pursuant to 35 U.S.C. § 289, together with prejudgment interest and costs and reasonable attorneys' fees, pursuant to 35 U.S.C. §§ 284 and 285;

G.      That this Court require an accounting of profits by Nautica;

H.      That this Court award New Balance Nautica's profits, New Balance's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and/or 1117, and Mass. Gen. L. C. 93A and 110H §§ 11-14, 16; and

I.      That this Court award New Balance such other and further relief that this Court deems just and proper.

**JURY DEMAND**

New Balance demands a trial by jury of all claims so triable.

Respectfully submitted,

NEW BALANCE ATHLETICS, INC.
*By its attorneys*,

/s/ Mark S. Puzella
ORRICK, HERRINGTON & SUTCLIFFE LLP
Mark S. Puzella (BBO# 644850)
R. David Hosp (BBO# 634091)
Sheryl K. Garko (BBO# 657735)
500 Boylston Street, Suite 1850
Boston, MA, 02116-3740
Telephone:  617.880.1800
mpuzella@orrick.com
dhosp@orrick.com
sgarko@orrick.com

Elizabeth E. Brenckman (*pro hac vice* forthcoming)
51 W 52nd Street
New York, NY 10019-6142
Telephone:  212.506.3535
ebrenckman@orrick.com

Dated: August 21, 2019